UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICKY J. DEROCHIE,

                           Plaintiff,

v.                                                 8:05-CV-1075
                                                 (GHL)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OFFICE OF ANTHONY B. LAMB           ANTHONY B. LAMB, ESQ.
Counsel for Plaintiff
300 Cornerstone Dr., #335
Williston, Vermont 04595

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
    Northern District of New York
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

### <u>MEMORANDUM DECISION AND ORDER</u>[1]

## I.      BACKGROUND

###     A.    Procedural History

Plaintiff filed an application for disability insurance benefits on May 20, 2003.

(Administrative Transcript ("T") at 64-66.)  The application was denied and Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ") which was held on December 15, 2004.  (T.

_____

[1]       This matter is before the Court by consent of both parties.  (Dkt. No. 7.)

at 21-41.)  On February 16, 2005, the ALJ issued a decision finding that Plaintiff was not

disabled.  (T. at 13-20.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on

June 28, 2005.  (T. at 3-7.)  Plaintiff commenced this action on August 26, 2005.  (Dkt. No. 1.)

### B.      The Contentions

Plaintiff makes the following claims:

(1)      The ALJ's decision is not supported by substantial evidence.  (Dkt. No. 4 at 13.)

(2)      The ALJ improperly rejected Plaintiff's subjective complaints by asserting that he

was able to perform daily activities of living.  (Dkt. No. 4 at 14.)

(3)      The ALJ failed to give appropriate weight to Plaintiff's subjective complaints of

pain, which were supported by objective medical evidence.  (Dkt. No. 4 at 14.)

(4)      The ALJ failed to give proper weight to Plaintiff's treating and other physicians.

(Dkt. No. 4 at 15.)

(5)      The ALJ failed to recontact treating physician, George Cook, M.D., to seek

additional information with regard to his opinion that Plaintiff could not "sit for prolonged

periods of time."  (Dkt. No. 4 at 15-16.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

should be affirmed.  (Dkt. No. 5.)

## II.    APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2006).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work;

unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the

decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered

throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197

(1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its

interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.

1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on October 16, 1959.  (T. at 64.)  He graduated from high school and

has previously worked as a paint sprayer for a furniture manufacturer, lacer for a slipper factory,

and construction worker.  (T. at 81, 86, 89.)  Plaintiff alleges disability due to low back pain

resulting from an injury sustained while working in 2002.  (T. at 80.)

IV.     THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since December 13, 2002 (T. at 19); (2) Plaintiff's musculoskeletal impairment was severe but did not meet or equal a listed impairment (*Id.*); (3) Plaintiff's allegations regarding his limitations were not totally credible (*Id.*); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work activity (T. at 20); (5) Plaintiff was unable to perform his past relevant work (*Id.*); and (6) based upon Plaintiff's RFC, age, education, and work experience, Rule 201.18 of the Medical-Vocational Guidelines directed a finding of not disabled (*Id.*)

V.      DISCUSSION

A.      Did the ALJ Properly Find that Plaintiff Could Perform Sedentary Work?

Plaintiff contends that the ALJ's finding that Plaintiff could perform a full range of sedentary work[2] is not supported by substantial evidence.[3]  (Dkt. No. 4 at 13.)  Specifically, Plaintiff argues that "[t]he only evidence that the ALJ cites in support of his opinion is the 'daily activities['] of Mr. Derochie."  (Dkt. No. 4 at 13.)  The Court interprets Plaintiff's argument to state that the ALJ erred by basing his finding regarding Plaintiff's RFC on his daily activities

---

[2]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2006).

[3]     The Court notes that Plaintiff's argument regarding this point consists of six sentences that reference Plaintiff's "treating physicians" yet never identify by name which physicians he considers to be treating.  Furthermore, Plaintiff cites no caselaw, regulations, or other authority to support his point.  Nor does Plaintiff provide any citations to the record to support his position.

because these activities were limited by his treating physicians.  (*Id.*)  Defendant responds that the ALJ's decision is supported by substantial evidence.  (Dkt. No. 5 at 10-12.)  The ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work.  (T. at 15, 17-18, 20.) The ALJ also stated "[a]lthough I do not doubt that, due to the claimant's low back pain, he would not have the ability to stand and walk for prolonged periods and perform frequent bending or significant lifting, I believe that he has the ability to lift 10 pounds, sit up to six hours, and stand and walk up to two hours in an eight-hour workday."  (T. at 15.)

To the extent that Plaintiff argues that remand is warranted because the ALJ's decision is based solely on the fact that Plaintiff had the ability to perform certain activities of daily living, this argument fails because the ALJ based his finding on the opinions of Donald Kasprzak, M.D. (who performed a consultative evaluation), George Cook, M.D. (a primary physician), Joel Santy, D.C. (a treating chiropractor), Joel Krawchenko, M.D. (a neurologist), Michael Horgan, M.D. (another neurologist), and the report from Seaway Orthopedics (where a Functional Capacity Evaluation was performed).  The ALJ discussed the evidence from each source, stated what weight he afforded each, and concluded that Plaintiff could perform the full range of sedentary work.  (T. at 15-18.)

However, to the extent that Plaintiff's argument could be interpreted[4] to contend that remand is warranted because the ALJ's finding was not based on substantial evidence, this argument is persuasive.  Remand is warranted because none of the physicians cited by the ALJ opined, with specificity, as to Plaintiff's ability to perform work-related activities, such as sitting,

---

[4]     This interpretation is drawn from Plaintiff's sentence that "[i]ndeed, the ALJ cannot cite a single doctor whose opinion supports the RFC conclusion drawn."  (Dkt. No. 4 at 13.)

standing, walking, lifting, and carrying.  While the physicians did opine generally in this regard, none specifically stated that Plaintiff could perform sedentary work or its requirements.

Dr. Kasprzak performed a consultative evaluation of Plaintiff on July 29, 2003.  (T. at 144.)  His impression was that Plaintiff had severe back pain, secondary to severe degenerative changes at L5-S1 with associated grade one spondylosis.  (T. at 147.)  Dr. Kasprzak also noted that Plaintiff had considerable difficulty getting on and off the examining table and undressing; that he walked in a stooped-over manner with his back in a markedly fixed position; and that he appeared to have severe back problems secondary to the MRI and x-ray findings he detailed in his report.  (T. at 146-147.)  Dr. Kasprzak also specifically stated "[j]udged symptomatology level as severe with severe limitation also in regards to his physical activity."  (T. at 147.)  There was no specific findings by Dr. Kasprzak with regard to Plaintiff's ability to, *inter alia*, sit, stand, walk, carry, or lift; he merely opined that there was a "severe limitation . . . in regards to [Plaintiff's] physical activity."  (*Id.*)

Dr. Cook first saw Plaintiff on November 24, 2003 and continued to follow up with Plaintiff through 2004.  (T. at 162.)  In an August 30, 2004 "Lumbar Spine Residual Functional Capacity Questionnaire," Dr. Cook diagnosed Plaintiff with a low back injury with spasms and rated his prognosis as "guarded."  (T. at 162.)  Even though Dr. Cook was asked to opine as to the amount of time Plaintiff could sit, stand, and walk, Dr. Cook left this portion of the form blank.  (T. at 164.)  He did state that Plaintiff might need a job that permitted the shifting of positions at will and stated that Plaintiff would always need to take unscheduled breaks at a rate of more than once per hour.  (*Id.*)  Although Dr. Cook stated that Plaintiff "can't do prolonged sitting," he did not elaborate as to what constituted "prolonged."  (*Id.*)

Plaintiff was also treated by a chiropractor, Dr. Santy.[5]  Plaintiff began seeing Dr. Santy on November 18, 2002.  (T. at 129.)  Dr. Santy diagnosed Plaintiff with acute lumbar sprain/strain with associated muscle spasms and prescribed spinal manipulative therapy, electrotherapy, stretching, and strengthening exercises.  (*Id.*)  On February 27, 2003, in a letter addressed to what appears to be an insurance carrier, Dr. Santy stated that Plaintiff had not improved as expected, and that a January 4, 2003 MRI revealed multiple disc disruptions.  (T. at 132.)  Treatment included spinal traction, TENS electrotherapy, and spinal manipulative therapy. (*Id.*)  In a May 20, 2003 letter, Dr. Santy stated that Plaintiff was suffering from multiple disc disruptions and that it would not be possible for him to perform any of his work-related duties, and that he would be unable to do so for some time.  (T. at 117.)  While Dr. Santy opined that Plaintiff could not perform work-related duties, he did not provide any specifics, nor did he state what medical evidence his opinion was based upon.  (*Id.*)

Dr. Krawchenko's March 1, 2004 examination[6] revealed that Plaintiff was in moderate discomfort (T. at 157) and that he had stenosis, small disc protrusions, and spurs (T. at 158).  Dr. Krawchenko recommended conservative treatment, including medications, chiropractic

---

[5]     Although Dr. Santy, as a chiropractor, is not an "acceptable medical source," his reports and opinions may nonetheless be considered by the SSA "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 C.F.R. § 404.1513(d)(1) (2006).

[6]     The Court notes that Plaintiff considers Dr. Krawchenko a treating physician because he was in attendance each time Plaintiff was seen by Timothy M. Wiebe, M.D., another physician who practiced with Dr. Krawchenko.  (T. at 156, Dkt. No. 4 at 4.)  This argument is implausible based upon the record at hand.  There are only two reports from visits with Dr. Wiebe and one report from Dr. Krawchenko.  (T. at 118-119 (copy at 126-127), 125, 157-158.) This does not represent "a detailed, longitudinal picture of [a claimant's] medical impairment." 20 C.F.R. § 404.1527(d)(2) (2006).

treatment, the use of a brace and TENS unit, and restriction of his activities including "not sit[ting] a lot, not stand[ing] in one position, not bend[ing] a lot, [and] not lift[ing] more than 10 lbs." (T. at 158.) Dr. Krawchenko further opined that he didn't "think that he is going to improve or recover that he can carry out any type of normal occupation since he has to take pain medication, he has to stop and rest and there is no job that he could carry out." (*Id.*)

Dr. Horgan examined Plaintiff on at least two occasions, March 12, 2004 and November 16, 2004. (T. at 190-191.) Dr. Horgan noted that Plaintiff underwent three epidural steroids and that none were successful. (T. at 190.) A CT scan revealed "just some degeneration at L5-S1" and there was no evidence of spondyloisthesis. (*Id.*) At the November 16, 2004 examination, Plaintiff had undergone a discogram which was moderately positive at the L3-4 level and was negative at L5-S1 and L4-5. (T. at 191.) Dr. Horgan did not think surgery was an option and "encouraged [Plaintiff] to settle his worker's compensation claim and move on to some degree with his life. I have also told him that he is at low risk of injuring himself neurologically should he return to some form of work." (*Id.*)

A Functional Capacity Evaluation was conducted by Seaway Orthopedics on November 18, 2004. (T. at 167-169.) In the evaluation, Ruth A. Dowdy, P.T., specifically stated "I do feel that today's evaluation **does not give good insight** to Mr. Derochie's capabilities." (T. at 169, emphasis in original.) Ms. Dowdy also stated that she did not feel that Plaintiff was a good test candidate and that his "extraneous expression" may have indicated a magnification of his symptoms. (T. at 169.) While the ALJ noted Ms. Dowdy's skepticism, it is unclear how this Functional Capacity Evaluation weighed, if at all, into the ALJ's finding regarding Plaintiff's RFC.

As is apparent from the evidence discussed above,[7] with the exception of Dr. Krawchenko stating that Plaintiff could not lift more than ten pounds, none of the physicians opined with specificity regarding Plaintiff's ability or inability to perform work-related activities. In the instant case, remand is appropriate here because it is unclear upon what evidence the ALJ based his opinion (that Plaintiff could perform the full range of sedentary work) and therefore the Court cannot determine whether his finding is supported by substantial evidence.

      **B.**      **Did the ALJ Err in Evaluating Plaintiff's Subjective Complaints of Pain?**

In points two and three of his brief, Plaintiff contends that the ALJ improperly rejected Plaintiff's subjective complaints by asserting that he was able to perform activities of daily living.  Plaintiff also contends that the objective medical evidence supports his allegations of pain.  (Dkt. No. 4 at 14.)  Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints.  (Dkt. No. 5 at 16-19.)  The ALJ found that Plaintiff's allegations as to the frequency and severity of his symptoms and limitations were inconsistent with his activities of daily living and found them to be not fully credible.  (T. at 18.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

---

       [7]       In addition, Carol A. Wakeley, M.D., a State Agency physician, completed a Request for Medical Advice on September 30, 2003.  (T. at 148-149.)  In it, she states that Plaintiff would be limited to sitting for six hours per day, standing and walking for six hours per day, and lifting up to twenty pounds.  (T. at 148.)  Furthermore, she said he could bend occasionally and had to change his position to relieve pain.  (*Id.*)  This assessment was not mentioned by the ALJ in his decision.

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5

(S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility

assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. §

404.1529 (2006); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5

(N.D.N.Y. Mar. 3, 1998) and SSR 96-7p.  First, the ALJ must consider whether there is an

underlying medically determinable physical or mental impairment(s) which could reasonably be

expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not

involve a determination as to the intensity, persistence, or functionally limiting effects of the

claimant's pain or other symptoms.  *Id.*  If no impairment is found which could reasonably be

expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do

basic work activities.  An individual's statements about his pain are not enough by themselves to

establish the existence of a physical or mental impairment, or to establish that the individual is

disabled.  *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably

be expected to produce the claimant's pain or other symptoms has been established, the second

step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the

pain or symptoms to determine the extent to which they limit the claimant's ability to perform

basic work activities.  *Id.*  Whenever a claimant's statements about the intensity, persistence, or

limiting effects of the claimant's pain or other symptoms are not substantiated by objective

medical evidence, the ALJ must make a finding on the claimant's credibility.  *Id.*  A claimant's

symptoms will be determined to diminish his/her capacity for basic work activities to the extent

that his/her alleged functional limitations and restrictions due to symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence in the case record. *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3) (2006).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff's back impairment and its resulting symptoms were clearly documented in the record. Thus, the first step of the two-step analysis is met because Plaintiff had a medically determinable impairment that could reasonably be expected to produce his symptoms. Turning

13

to step two, the ALJ then had to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his ability to perform basic work activities.  The fact that the ALJ's decision discusses Plaintiff's daily activities at length (T. at 18)  shows that the ALJ found that Plaintiff's statements about the intensity, persistence or limiting effects of his pain were not substantiated by the objective medical evidence.  However, there is some objective medical evidence which substantiates Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms.  For example, Dr. Krawchenko felt that Plaintiff was "totally disabled most likely on a permanent basis."  (T. at 158.)  Furthermore, Dr. Santy remarked that "[i]t is impossible for [Plaintiff] to perform any of his work related duties at this time and will be unable to do so for some time."  (T. at 117.) Accordingly, remand is appropriate for reevaluation of Plaintiff's credibility.

### C.   Did the ALJ Err in Evaluating the Opinions of Plaintiff's Treating Physician?

Plaintiff argues that the ALJ failed to give proper weight to the opinions of Plaintiff's treating physician.  (Dkt. No. 4 at 15.)  Specifically, Plaintiff contends that the opinions of Dr. Cook are supported by the medical evidence in the record.[8]  (*Id.*)  Defendant responds that the ALJ properly evaluated the opinions of the physicians contained in the record.  (Dkt. No. 5 at 12-16.)  The ALJ evaluated the opinions of Dr. Kasprzak (to whom the ALJ gave some weight), Dr. Cook (who was not entitled to controlling weight), Dr. Santy (whose reports were not dispositive on the issue of disability), Dr. Krawchenko (to whom the ALJ gave some, but not controlling,

---

[8]      Even though Plaintiff's brief refers to "treating and other physicians," he only specifically names Dr. Cook; no other physicians are mentioned.  (Dkt. No. 4 at 15.)

weight), and Dr. Horgan (to whom the ALJ gave "more weight").[9]

The medical opinions of a treating physician[10] are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. § 404.1527(d)(2) (2006).  In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts.  Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion."  *Id.*  These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether

---

[9]     Even thought the record contains a Functional Capacity Evaluation report from Seaway Orthopedics, the ALJ did not mention what weight, if any, he gave to it.  (T. at 167-169.)

[10]     "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. § 404.1502 (2006).

the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2) (2006).  The Regulations further state that "good reasons" will be given for the weight afforded to the treating source's opinion.  *Id.*

In declining to give Dr. Cook, a treating physician, controlling weight, the ALJ noted that the record contained Dr. Cook's treatment notes, as well as "C-4 reports submitted to Workers Compensation by Dr. Cook."  (T. at 16.)  In these C-4 reports, Dr. Cook opined that Plaintiff was totally disabled.  (T. at 173, 175.)  In his decision, the ALJ found "that Dr. Cook's reports are not dispositive of the issue of disability and [he did] not find that these forms [were] entitled to controlling weight."  (T. at 16.)  It appears from the language in the ALJ's decision that he declined to give controlling weight to Dr. Cook's opinions as they appeared in the Workers Compensation forms.  It is not evident from the ALJ's decision what weight, if any, he gave to Dr. Cook's other opinions, e.g., the Lumbar Spine Residual Functional Capacity Questionnaire completed on August 30, 2004 (T. at 162-166).  Furthermore, the ALJ did not comply with the Regulations when he rejected Dr. Cook's opinions because he failed to discuss the factors set forth in 20 C.F.R. § 404.1527(d)(2).  Accordingly, remand is necessary.[11]

_____

[11]     As stated above, although Plaintiff argues that the ALJ "failed to give proper weight to the opinions of treating and other physicians" (Dkt. No. 4 at 14), the only physician named in this section of his brief is Dr. Cook.  In his brief, Defendant has argued that the ALJ properly evaluated the opinions of Dr. Cook, as well as other physicians, including Drs. Krawchenko and Santy.  (Dkt. No. 5 at 12-16.)  Because remand is appropriate, the Court presumes that if the ALJ declines to give controlling weight to any treating physician, he will discuss the factors, as required by 20 C.F.R. § 404.1527(d)(2).  In addition, if the ALJ does not give Plaintiff's treating source(s) controlling weight, he must "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."  20 C.F.R. § 404.1527(f)(2)(ii) (2006).

**D.       Did the ALJ Err in Failing to Recontact Plaintiff's Treating Physician?**

Plaintiff contends that the ALJ erred in failing to recontact Dr. Cook, a treating physician,

regarding his opinion that Plaintiff "can't do prolonged sitting."  (Dkt. No 4 at 15-16, quoting T.

at 164.)  Defendant argues that recontacting Dr. Cook was not necessary because he was

specifically asked to provide the information and chose not to do so, thus the Defendant was not

obligated to seek additional information or clarification from Dr. Cook.  (Dkt. No. 5 at 13 (citing

20 C.F.R. § 404.1512(e)(2)).[12]

"It is the rule in [the Second C]ircuit that 'the ALJ, unlike a judge in a trial, must . . .

affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits

proceeding,' even if the claimant is represented by counsel."  *Tejada v. Apfel*, 167 F.3d 770, 774

(2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) and *Echevarria v.*

*Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  "[T]he record must

be sufficiently complete to 'make a determination . . . about whether [plaintiff is] disabled . . .'"

*Youney v. Barnhart*, 280 F. Supp. 2d 52, 62 (W.D.N.Y. 2003) (quoting 20 C.F.R. § 404.1512(e)).

The ALJ has the duty to develop the record and seek out further information where physicians'

reports are inconsistent and where gaps exist in the record.  *Peterson v. Barnhart*, 219 F. Supp.

2d 491, 494-95 (S.D.N.Y. 2002) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

However, where the ALJ has a "complete medical history, the ALJ is under no duty to seek

additional information before rejecting a claim."  *Peterson*, 219 F. Supp. 2d at 495 (citing *Rosa*,

---

[12]       20 C.F.R. § 404.1512(e)(2) states "[w]e may not seek additional evidence or
clarification from a medical source when we know from past experience that the source either
cannot or will not provide the necessary findings."  20 C.F.R. § 404.1512(e)(2) (2006).  It is
unclear from the instant record whether this is the case.  There is no evidence that would indicate
that Dr. Cook could, could not, would, or would not provide the necessary findings.

168 F.3d at 79 n.5 (other citations omitted)); *see also Youney*, 280 F. Supp. 2d at 62 (the Commissioner "need not develop the record in areas where there is absolutely no credible evidence, medical or otherwise, that such development is necessary") (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ); and *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) ("The ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability.").

The lack of a medical source statement as to what a claimant can do despite his/her impairment(s) does not render a report incomplete (20 C.F.R. § 404.1513(b)(6)).  However, the absence of a residual functional capacity assessment makes it "difficult to see how the ALJ could conclude that plaintiff 'has the residual functional capacity to perform light work.'" *Blake v. Bowen*, Civ. No. 86-3091, 1988 WL 16183, at *1 (E.D.N.Y. Feb. 19, 1988).

The record presents conflicting evidence regarding Plaintiff's ability or inability to perform work-related activities.  For example, on May 20, 2003, Dr. Santy opined that "[i]t is impossible for [Plaintiff] to perform any of his work related duties at this time and will be unable to do so for some time."  (T. at 117.)  On July 29, 2003, Dr. Kasprzak remarked "[j]udged symptomatology level as severe with severe limitation also in regards to his physical activity."  (T. at 147.)  Dr. Krawchenko remarked on March 1, 2004, that Plaintiff's activities should be restricted, in that he should "not sit a lot, not stand in one position, not bend a lot, not lift more than 10 lbs."  (T. at 158.)  Furthermore, Dr. Krawchenko opined that Plaintiff was "totally disabled most likely on a permanent basis.  Even with surgery, he most likely would be permanently disabled.  I don't think that he is going to improve or recover that he can carry out any type of normal occupation since he has to take pain medication, he has to stop and rest and

18

there is no job that he could carry out."  (*Id.*)

On the other hand, Dr. Wakeley opined on September 30, 2003, that Plaintiff would be limited to sitting for six hours, standing and walking for six hours, lifting a maximum of twenty pounds, bending occasionally, and had to change his position to relieve pain.  (T. at 148.)  In addition, Dr. Horgan stated that Plaintiff was "at low risk of injuring himself neurologically should he return to some form of work."  (T. at 191.)

The instant matter is not one where the record is sufficiently complete so that a determination regarding disability may be made.  The physicians' reports were inconsistent and there were gaps in the record, therefore it was incumbent on the ALJ to fulfill his duty to develop the record and seek out further information.  *Youney*, 280 F. Supp. 2d at 62 and *Peterson*, 219 F. Supp. 2d at 494-95.  Accordingly, remand is appropriate.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[13] for further proceedings consistent with the above.


Dated: September 25, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[13]     Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).